TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
KEVIN J. BUTLER (Cal. Bar No. 329129)
Acting Chief, Major Crimes Section
JENA A. MACCABE (Cal. Bar No. 316637)
Acting Deputy Chief, Major Crimes Section
Assistant United States Attorneys
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5046
    Facsimile: (213) 894-0141
    E-mail:    kevin.butler2@usdoj.gov
           jena.maccabe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>           v.<br><br>JESON NELON PRESILLA FLORES,<br><br>        Defendant. | No. 5:25-CR-00198-KK-6<br><br>OPPOSITION TO MOTION TO (1) DISMISS INDICTMENT WITH PREJUDICE AND (2) FOR AN ORDER EXONERATING BOND<br><br>Hearing Date: February 5, 2026<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the<br>               Hon. Kenly Kiya<br>               Kato |

     Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Kevin J. Butler and Jena A. MacCabe, hereby files its opposition to defendant JESON NELON PRESILLA FLORES's motion to dismiss the indictment with prejudice and for an order exonerating bond.

This opposition is based upon the attached memorandum of points and authorities, the attached declaration of Jena A. MacCabe and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 15, 2026          Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States
Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


_____/s/_____
KEVIN J. BUTLER
JENA A. MACCABE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant JESON NELON PRESILLA FLORES ("defendant") moves to dismiss the indictment with prejudice and for an order exonerating bond because he has been deported.  He argues that the government chose to forgo his criminal prosecution.  (Mot. 5, Dkt. 113.)  For the undersigned prosecutors who worked countless hours to pursue criminal convictions and sentences in this case, nothing could be further from the truth.  Those prosecutors remain eager to prosecute defendant for his crimes and vindicate his victims' -- who unabashedly share that desire -- interests.  Instead, defendant was the one who chose to forgo his prosecution by declining the immigration judge's relief offers and requesting voluntary departure -- facts which he conveniently omits from his motion.  Prosecutors are supposed to allow the civil immigration process to play out independently while criminal charges are pending.  See, e.g., United States v. Cepeda-Luna, 989 F.2d 353, 356 (9th Cir. 1993).  That is exactly what they did in this case -- unwittingly to defendant's benefit in that he will now avoid trial, and any potential conviction and sentence, unless and until he returns to the United States.  To give defendant a further windfall of being allowed to return to the United States with these charges irrevocably erased from his record would be improper under the law and unfair given the facts.

"Under its supervisory powers, a district court may dismiss an indictment with prejudice for prosecutorial misconduct only if there is '(1) flagrant misbehavior and (2) substantial prejudice.'"  United States v. Bundy, 968 F.3d 1019, 1031 (9th Cir. 2020) (quoting United States v. Kearns, 5 F.3d 1251, 1253 (9th Cir. 1993)).  There is none

here.  Accordingly, the Court should dismiss the indictment as to defendant only and only without prejudice and exonerate his bond.

**II.  BACKGROUND**

On July 11, 2022, defendant and his co-thieves broke into a Brinks semitruck at a Flying J truck stop and stole approximately $100,000,000 in jewelry.  (Dkt. 1 at 6-7.)  At that time, the jewelry was in transport from an international jewelry show.  (Id. at 6.)

On June 11, 2025, defendant was indicted for Conspiracy and Theft from Interstate or Foreign Shipment in violation of 18 U.S.C. §§ 371 and 659.  (Dkt. 1.)  On June 17, 2025, defendant made his initial appearance on the charges and was ordered detained on danger and nonappearance grounds based on the information presented during that hearing.  (Dkt. 26, 39, 40.)  On July 29, 2025, the parties stipulated to defendant's release on a secured bond with conditions including, among others, location monitoring and home detention. (Dkt. 49.)  On August 5, 2025, the Honorable Jean P. Rosenbluth, U.S. Magistrate Judge, granted defendant's release after a hearing.  (Dkt. 52.)  On August 13, 2025, defendant filed an application to modify his bond because one of his previously proposed sureties declined to execute his affidavit.  (Dkt. 75.)  On August 21, 2025, after another hearing, Judge Rosenbluth modified defendant's bond.  (Dkt. 79.)

In a report dated September 2, 2025, defendant's Pretrial Services officer informed the parties that defendant had been "transferred to the custody of Immigration and Customs Enforcement [("ICE")] on a detainer."  (MacCabe Decl., Ex. 1.)  Before receiving this report, the prosecutors were unaware of any immigration detainer on defendant.  (MacCabe Decl. ¶ 2.)  In fact, the only information that the prosecutors had was that as of March 4, 2025:

2

I.C.E. RECORDS INDICATE THAT <u>THIS SUBJECT IS LEGALLY RESIDING IN THE UNITED STATES AS A PERMANENT RESIDENT AND MAY LIVE AND WORK IN THE UNITED STATES</u>.  IF THIS PERSON HAS BEEN CONVICTED FOR A FELONY OFFENSE, THIS PERSON MAY BE AMENABLE TO REMOVAL PROCEEDINGS FOR VIOLATIONS OF THE IMMIGRATION AND NATIONALITY ACT.

(MacCabe Decl., Ex. 2 (emphasis added).)  The prosecutors believed that defendant was, in fact, a lawful permanent resident, and that he would continue to live and work in the United States while awaiting trial.  (MacCabe Decl. ¶ 3.)

On the evening of January 8, 2026, defense counsel emailed the undersigned that defendant had been deported to Ecuador and that he was planning to move to dismiss the indictment with prejudice. (MacCabe Decl. ¶ 4.)  The next morning, the undersigned responded, expressing surprise about the deportation due to defendant's legal status and requesting documentation related to the deportation. (<u>Id.</u>)  That evening, defense counsel responded without any documentation -- despite representing that he had a document reflecting the deportation but not a document reflecting his arrival in Ecuador yet -- and filed the instant motion -- again without documentation.  (<u>Id.</u>)

Without more information from defense counsel, the prosecutors obtained documentation from the Department of Homeland Security ("DHS"), including the immigration judge's decision noting that defendant applied for two types of voluntary departure.  (MacCabe Decl., Ex. 3.)  The prosecutors also learned that during defendant's immigration hearing on December 16, 2025, he admitted to all the allegations against him in his immigration proceedings and asked for Chile to be the designated country of removal, while DHS asked for Ecuador in the alternative.  (MacCabe Decl. ¶ 5.)  The immigration

judge found defendant eligible to pursue several different relief options, but after discussing it with the judge, defendant opted to not pursue them and requested voluntary departure. (Id.) Voluntary departure allows someone to avoid a final order of removal, see 8 U.S.C. § 1229c, which carries criminal and civil consequences. The immigration judge denied defendant's voluntary departure application, but issued a final order of removal (which, for purposes of defendant's motion, is the same as if defendant voluntarily departed), and took waivers of appeal from both parties. (MacCabe Decl., Ex. 3.)

## III. ARGUMENT

The Bail Reform Act (the "BRA") governs detention in criminal cases. See 18 U.S.C. §§ 3142, 3143. The Immigration and Nationality Act (the "INA") governs detention of aliens in civil removal proceedings. See 8 U.S.C. §§ 1226, 1231. They are "different statutory and regulatory regime[s]." United States v. Diaz-Hernandez, 943 F.3d 1196, 1199 (9th Cir. 2019). "Detention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA are separate functions that serve separate purposes and are performed by different authorities." United States v. Vasquez-Benitez, 919 F.3d 546, 552 (D.C. Cir. 2019). Accordingly, "ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination." United States v. Veloz-Alonso, 910 F.3d 266, 270 (6th Cir. 2018). "No court of appeals . . . has concluded that pretrial release precludes pre-removal detention," United States v. Soriano Nunez, 928 F.3d 240, 245 (3d Cir. 2019) (following Veloz-Alonso and Vasquez-Benitez), because nothing in the BRA prevents

4

DHS/ICE "from exercising its independent statutory authority to detain an arriving noncitizen pending removal," United States v. Ventura, 747 F. App'x 20, 22 (2d Cir. 2018).

To be sure, alienage (and even illegal presence) does not categorically allow a defendant to be denied bail pending trial under the BRA. United States v. Santos-Flores, 794 F.3d 1088, 1091 (9th Cir. 2015). Nor may a district court detain a defendant as a risk of nonappearance "based on the possibility of his detention or removal by immigration authorities." Id. Nor, for that matter, may a district court release a defendant on the ground that he will be subject to an immigration detainer and therefore cannot flee. See Diaz-Hernandez, 943 F.3d at 1199. Again, the BRA and the INA are different processes, as the Ninth Circuit explained in Diaz-Hernandez, relying on both Vasquez-Benitez and Santos-Flores. Id. at 1198–99. They provide different bases for detention.

Defendant's motion starts from the opposite premise and, from there, asks this Court to conclude that a criminal release order prevented ICE from separately enforcing civil immigration laws. (See, e.g., Mot. 3 ("Defendant Flores . . . was transferred by the Government to [ICE] custody, in derogation of this Court's Order granting Defendant's release on bond."), 4 ("The transfer of Defendant Flores to ICE custody, particularly after the bail hearings and the posting of bail, frustrated and violated the Bail Reform Act and the Order of the Magistrate Judge . . . . The Government's actions here have been in defiance of the Court's Order for release.").) In his motion, defendant relies exclusively on United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012), besides one citation to Santos-Flores, which, as discussed above,

concerned district courts' bail decisions in criminal cases, not ICE's decisions in immigration cases.  Trujillo-Alvarez was specifically rejected by the Sixth and D.C. Circuits, see 910 F.3d at 268; 919 F.3d at 553, and the Ninth Circuit in Santos-Flores relied on it only for the proposition (undisputed in the case here, as the undersigned even stipulated to defendant's criminal release) that "the risk of nonappearance" under the BRA cannot mean the risk of ICE detention, regardless of any remedy for government conduct, 794 F.3d at 1091 & n.3.  All agree that the BRA analysis is independent of what happens on the civil immigration side.

Defendant's contrary reasoning would eliminate the statutory separation between criminal prosecution and civil immigration enforcement.  Immigration detention must "serve its purported immigration purpose." Demore v. Kim, 538 U.S. 510, 527 (2003).  ICE must "detain[] the alien for the permissible purpose of effectuating his removal and not to 'skirt [the] Court's decision [in] setting the terms of [his] release under the BRA.'" Vasquez-Benitez, 919 F.3d at 552; see also Soriano Nunez, 928 F.3d at 247 n.8 (suggesting government cannot use "ICE detention . . . to circumvent a district court's BRA release order" (citing Ventura, 747 F. App'x at 21)); Cepeda-Luna, 989 F.2d at 356 (noting Speedy Trial Act problems "if federal criminal authorities could collude with civil or state officials to have those authorities detain a defendant pending federal criminal charges").

The government here did exactly what it is supposed to do after a defendant is released under the BRA: the criminal prosecutors let the civil immigration process play out.  They played no role in ICE's

decisions,[1] which defendant assented to, or even knew about those decisions beforehand.

If defendant's removal had been delayed for his criminal trial, then his immigration detention really would be (unlawfully) an alternative form of criminal detention. And his removal does not moot the criminal prosecution. See United States v. Villamonte-Marquez, 462 U.S. 579, 581 n.2 (1983) ("That respondents have been deported likewise does not remove the controversy involved. Following a reversal of the Court of Appeals, there would be a possibility that respondents could be extradited and imprisoned for their crimes, or if respondents manage to re-enter this country on their own they would be subject to arrest and imprisonment for these convictions." (citing United States v. Campos-Serrano, 404 U.S. 293, 294 n.2 (1971))). Accordingly, dismissal of the indictment against defendant should be without prejudice.

## IV.  CONCLUSION

To be clear, the prosecutors here agreed to bail for a lawful permanent resident and did not improperly rely on any potential immigration status for him to be detained. Unbeknownst to the prosecutors, defendant was taken into immigration custody. There, he faced two options: (1) assert his lawful permanent residence status, fight his criminal case, and face a potentially lengthy criminal sentence only to possibly be deported after his release; or (2) waive his immigration rights, functionally self-deport, and avoid criminal exposure all together. He chose the latter.

---

[1] As stated, the prosecutors were not even aware that defendant was eligible to be taken into immigration custody.

For the foreging reasons, the government respectfully requests that this Court dismiss the indictment as to defendant only and only without prejudice and exonerate his bond.

1

## <u>DECLARATION OF JENA A. MACCABE</u>

2      I, Jena A. MacCabe, declare as follows:

3      1.    I am an Assistant United States Attorney in the United

4  States Attorney's Office for the Central District of California.  I

5  am one of the prosecutors on this case.

6      2.    Attached hereto as Exhibit 1 is a redacted version of a

7  Pretrial Services report dated September 2, 2025, that I received,

8  stating that defendant JESON NELON PRESILLA FLORES ("defendant") had

9  been "transferred to the custody of Immigration and Customs

10 Enforcement on a detainer."  Before receiving this report, I and the

11 other prosecutor on this case were unaware of any immigration

12 detainer on defendant.

13     3.    Attached hereto as Exhibit 2 is a redacted version of an

14 Immigration and Customs Enforcement Law Enforcement Support Center

15 response for defendant dated March 4, 2025, that I received from the

16 Federal Bureau of Investigation in preparing to charge this case.

17 Based on that response, which states that "THIS IS NOT A GOVERNMENT

18 DETAINER!" and "THIS SUBJECT IS LEGALLY RESIDING IN THE UNITED STATES

19 AS A PERMANENT RESIDENT AND MAY LIVE AND WORK IN THE UNITED STATES,"

20 I and the other prosecutor on this case believed that no immigration

21 detainer would be issued as to defendant.  When we stipulated to

22 defendant's pretrial release, we believed that he would be released

23 on those conditions and that he would continue to live and work in

24 the United States while awaiting trial.

25     4.    On the evening of January 8, 2026, defense counsel emailed

26 me that defendant had been deported to Ecuador and that he was

27 planning to move to dismiss the indictment with prejudice.  The next

28 morning, I responded, expressing my genuine surprise about the

1

1  deportation due to defendant's legal status and requesting

2  documentation related to the deportation.  That evening, defense

3  counsel responded without any documentation -- despite representing

4  that he had a document reflecting the deportation but not a document

5  reflecting his arrival in Ecuador yet -- and filed the instant motion

6  -- again without documentation.

7      5.    Attached hereto as Exhibit 3 is the immigration judge's

8  decision that I obtained on January 13, 2026, to prepare this

9  response to defendant's motion.  A Special Assistant United States

10  Attorney who handles immigration matters for my office informed me

11  that Department of Homeland Security ("DHS") notes indicate that

12  during defendant's immigration hearing on December 16, 2025, he

13  appeared pro se, admitted to all the allegations against him in his

14  immigration proceedings, and asked for Chile to be the designated

15  country of removal, while DHS asked for Ecuador in the alternative.

16  According to that Special Assistant United States Attorney's review

17  of the notes, the immigration judge found defendant eligible to

18  pursue several different relief options, but after discussing it with

19  the judge, defendant opted to not pursue them and requested voluntary

20  departure.  On January 13, 2026, I requested all recordings of that

21  immigration hearing and received the following automated email

22  response: "Thank you for submitting your request for court records.

23  The immigration court will contact you regarding the processing of

24  your request."  As of this filing, I have not received any further

25  response.  If I receive any recordings or additional information by

26  the hearing on this motion, I will provide them to defense counsel

27  and the Court.

28

6.   I and the other prosecutor on this case never intervened in defendant's immigration proceedings.  When I spoke with defense counsel over the course of this criminal prosecution, he informed me that defendant had hired an immigration attorney who took his money without working on his case (to which the other prosecutor on this case offered to investigate if defendant reported that to law enforcement, an offer which defense counsel did not follow up on), so defense counsel was trying to help defendant with his immigration proceedings.  I asked defense counsel whether he wanted to file a stipulation to try to bring defendant back into federal custody on the charges here, which defense counsel did not follow up on.  If the Court dismisses the charges against defendant without prejudice and he returns to the United States, I will refile the charges.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on January 15, 2026.

_____
        /s/
    JENA A. MACCABE